**UNITED STATES of America**
v.
**Tyrone D. WILSON, Defendant.**
**No. 70 CR. 954.**

United States District Court,
S. D. New York.
Oct. 1, 1973.

---

## 1186

Paul J. Curran, U. S. Atty., by Kenneth R. Feinberg, Asst. U. S. Atty., New York City, for plaintiff.

Robert Kasanof, Legal Aid Society, Federal Defender Serv. Unit, by Murray Mogel, New York City, for defendant.

### Memorandum Opinion and Order Revoking Probation

MOTLEY, District Judge.

Defendant, Tyrone D. Wilson, pleaded guilty on November 19, 1970 to one count of a two-count indictment charging him with mail embezzlement on October 2, 1970 while a postal employee. 18 U.S.C. § 1709. The indictment had been filed on November 17, 1970. He was sentenced on January 6, 1971 to a term of 18 months. Execution of sentence was suspended and defendant placed on probation for a period of 18 months, subject to the standing conditions of probation.[1] One of the standing conditions of probation advises the probationer as follows: "You shall work regularly at a lawful occupation and support your legal dependents, if any, to the best of your ability."[2] A special condition of probation was also imposed, however, in addition to the standing conditions. Defendant was ordered to "pay all alimony assessments due and make currect payments during the probation period."

As of December 9, 1970, defendant's court-ordered support payments for his two children living with their mother in the Virgin Islands were $1,000 in arrears.[3] (Presentence Report, pp. 3–4). The Presentence Report reads as follows:

> "As of 11/7/66, defendant was ordered to pay $20 weekly, but he did not make regular payments. He was continually in arrears on his payments and was brought into Court on other occasions, and ordered to pay various amounts, including something on the arrears." (p. 3.)

As a result of the instant offense, defendant lost his job in the Post Office where, as a postal employee, he earned $4.28 per hour (Presentence Report, p. 5). He had been working in the Post Office, however, only since December 30, 1968. Before that, as a clerk in a book store, he earned $85.80 per week. (Presentence Report, p. 5.) It was November 7, 1966 when defendant was ordered by the Bronx Family Court to pay to his wife that he had left with two children in the Virgin Islands $20 per week for the support of the children.

At the time of sentence, defendant's Legal Aid Society counsel addressed the court on behalf of the defendant as follows:

> Mr. Curley: Your Honor, I spoke to Mr. Wilson and he has informed me that he has obtained employment with Lord & Taylor, and when I spoke with him the last time he had been there a few weeks working in the shipping department. He tells me he is still with that company.

---

1. Tr., 1/6/71, p. 7.

2. Probation Form No. 7 (February 1964).

3. At the rate of $12.00 per week on the arrears and $15.00 per week on current payments, making a total of $27.00 per week for 78 weeks, or a total outlay of $2,106, defendant would have fully complied with this special condition.

He has used funds that he received from the job to support himself and some people who are near and dear to him. (Tr., Jan. 6, 1971, p. 2.)

The court construed this statement as a request to put defendant on probation on condition that he remain gainfully employed and support his family.

The court, consequently, addressed the defendant as follows:

The Court: Mr. Wilson, are you working at the present time?

The Defendant: Yes I am.

The Court: How long have you been working?

The Defendant: Since 11–10.

Mr. Curley: November 10th.[4]

The Court: How much do you make a week?

The Defendant: I've just been raised to $100 a week.[5]

The Court: Pardon me?

The Defendant: I've had a raise this week. I was raised to $100 a week. I was working as a temp during the Christmas season and now I've been working permanent, you know. (Tr., Jan. 6, 1971, pp. 3–4.)

\* \* \* \* \* \*

The Court: Mr. Wilson's report does not indicate that we are dealing with a responsible individual here. Do you owe alimony to your wife in the Virgin Islands whom you support?

The Defendant: Yes, I do.

The Court: How much do you owe?

The Defendant: I don't really know the exact amount.

The Court: Is it about $1,000?

The Defendant: No, it is not.

The Court: What is it?

The Defendant: At the most it's about $400.[6]

The Court: Do you owe the Household Finance Company $1,400?

The Defendant: Yes.

The Court: Do you owe the Budget Enterprises $35?

The Defendant: That has been cleared up on that now.

The Court: Do you owe the Northeastern Discount Company $35?

The Defendant: That has been cleared up too.

The court then explained the reason for the special condition.

The Court: According to this report, he is ordered to pay $20 weekly and he did not make regular payments, and that he owes as of December 9, 1970 something in the amount of $1,000.

The Probation Department is asked to check into that to determine the amount presently due, and the defendant is to make such payments as will erase those arrears within eighteen months, and to make the current payments also during that period.

Do you understand that?

The Defendant: Yes.

The Court: The court is not inclined to deal leniently, Mr. Wilson, with people whose records indicate that they are not very responsible and are not apt to be law-abiding citizens.

Your record doesn't look very good, and this failure to support your children after having been ordered to do so by a court is the best evidence of disregard for law and refusal to abide by the law.

4. It should be noted that defendant secured employment about a month after he was forced to resign from the Post Office.

5. It should be noted that defendant claimed he was earning $100 per week and that his income tax return and W–2 forms for 1971 show that for the time he worked for Lord & Taylor, i. e., 1/1/71–9/14/71 he earned $2,871.20, that his total income for the year 1971 was $3,181.23, that he claimed four exemptions (himself and *three* children) and that he claimed a refund of the $127.41 withheld for federal income tax payments by Lord & Taylor.

6. This, of course, was inconsistent with the facts set forth in the Presentence Report.

So that means that if you don't make these payments you are going to jail for eighteen months. Do you understand that?

The Defendant: Yes, I do.

Mr. Putzel (Asst. U. S. Atty.): Your Honor, I assume just for the record that this order of probation is also subject to the standing probation order of this court.

The Court: They all are. (Tr., Jan. 6, 1971, pp. 5–7.)

On June 30, 1972, a petition for revocation of probation was filed by the Probation Department charging defendant, in three specifications, with failure to comply with the conditions of probation as follows:

1. That he has not made support payments to his family, as ordered by this court, and has only paid $410.00.

2. That his total arrears on support payments have increased since his grant of probation and are now $1,405.00.

3. That his current arrears on support payments have increased since his grant of probation and are now $490.00.

After a hearing, the court found that defendant had wilfully violated the terms of his probation, revoked that probation, and sentenced him to a term of six months. At that time this court delivered an oral opinion from the bench giving its reasons briefly for granting the petition. That oral opinion is set forth in the Court of Appeals opinion.

The court's judgment, however, was vacated in the Court of Appeals, United States v. Wilson, 469 F.2d 368 (2d Cir. 1972) and the case was remanded for further proceedings. The Court of Appeals ruled that the oral reasons given by this court for finding that the defendant wilfully violated the terms and conditions of his probation were not sufficient, but further ruled that:

. . . [T]he record indicated the possible existence of other supportable grounds which may have been considered by the Court as the basis for its conclusion that Wilson had 'wilfully

violated the terms of his probation' but have been left unexpressed by it. For instance, an examination of Wilson's income and other expenses during certain months may reveal that although he had sufficient means during those months to make the support payments ordered by the court he deliberately failed to do so. 469 F.2d at 371.

■■ The court finds that Mr. Wilson has wilfully violated his probation in that: 1) he had the means to make substantially more of the support payments ordered by the Bronx County Family Court and failed to do so when actually employed; and 2) defendant failed, by his irresponsible conduct, to remain gainfully employed.

1. As of January 27, 1971, Mr. Wilson's arrears were in the amount of $1,045. On that date, the Family Court ordered payments of $20 per week commencing on February 1, 1971, i. e., $5 on arrears and $15 on current payments. (Govt's Exh. 1.) Thereafter, Mr. Wilson made irregular payments totaling $320.-00 from February 9, 1971 through September 21, 1971.

2. Plaintiff earned a total of $2,871.-20 during the period January 1, 1971 to September 14, 1971 (letter of 2/14/73 from defense counsel to the court).

3. Plaintiff was fired by Lord & Taylor in September 1971 because of irregular attendance. This was the reason given by Lord & Taylor when defendant sought unemployment compensation payments. (Tr. 2/9/73, pp. 13–15. See also Tr. 6/27/72, pp. 20–21). He apparently received $70 per week in unemployment compensation payments until they were terminated. (Tr. 6/27/72, p. 21.)

4. Mr. Wilson had secured other employment in 1971 earning an additional $310.00. (See 1971 tax return attached to letter from defense counsel dated 3/23/73 and Tr. 6/27/72, pp. 21–22.) He was employed in early 1972, i. e., February 16 to April 5 and earned a total of $609.40. (See Exh. 2 attached to letter

from defense counsel dated 2/14/73.) Consequently, Mr. Wilson's total earnings during the period in question were $3,790.60, less taxes withheld (income and social security taxes) of $374.54, making a net income of $3,416.06. His total payments out of this income were $410.00.

5. As of March 1, 1972, Mr. Wilson's arrears were in the amount of $1,255.00 and the Family Court ordered that his payments be increased to $30 per week commencing on March 6, 1972, including $15 on current payments and $15 on arrears. From March 1, 1972 to June 21, 1972 defendant made three payments totaling $90.00. (Govt's Exh. 1.)

6. Plaintiff was living with a woman, Miss Shama Morton, during the period involved. (Tr. 6/27/72, p. 20.) Miss Morton contributed half of their monthly rental payments. Defendant's contribution was $35.37. (Tr. 2/9/73, pp. 22–23.) According to the pre-sentence report, Miss Morton was earning $264.00 bi-weekly as of December 24, 1970. It seems safe to assume that Miss Morton made additional contributions toward household expenditures and toward the support of their child. Defendant testified this child was living in the Virgin Islands (Tr. 6/27/72, p. 20.)

7. The court does not give weight to Mr. Wilson's other debts at the time of sentencing since he was under an obligation to comply with this court's probation order before attempting to pay any other debts.

8. Mr. Wilson's failure to make a good faith effort to comply with this court's probation order is further supported by his failure to make inquiries of either his Probation Officer or the Family Court as to whether his support payments might be reduced. See N.Y. Domestic Relations Law § 240. But it should be noted that the Family Court reviewed the matter in March 1972 and ordered increased payments.

This court in its bench opinion dated June 27, 1972 construed the testimony of defendant's Probation Officer to be that Mr. Wilson had failed to take any initiative to advise the Probation Officer of his (Wilson's) inability to make the required support payments. While defendant did discuss this failure to make payments with his Probation Officer during the course of their regular meetings—indeed, there was little else for defendant and his Probation Officer to discuss during these meetings—nevertheless, Mr. Wilson did not seek assistance in modifying the orders of either this court or the Family Court and evidenced no real concern about his failure. As the Probation Officer testified under cross examination by defense counsel:

Q. Now, do you recollect testifying on June 26, 1972 that Mr. Wilson, during the period of his probation, made partial payments or attempted to make payments when he was employed?

A. This to me is the whole bone of contention. He has made payments, he did make payments, I thought that he could have made more payments, according to the order of the court. He made payments.

Q. But you did not have at any time a monthly analysis of his income and expenditures, is that a fact?

A. No, that is not a fact. I had statements reported by him on his monthly report saying that he earned, for instance, $350, and he may have made $60 in payments that month, or $30, or no payments, and I thought that he was obliged to use some of that $350 to make payments. (Tr. 2/9/73, pp. 11–12.)

For all of the reasons set forth above, defendant's probation is revoked. Formal order to be entered.

In the event of an appeal, an order will be entered staying the court's order pending appeal.

So ordered.